Hearing you, hearing you, this Honorable Appellate Court for the Second District is now open. The Honorable Justice Joseph E. Burkett presiding, along with Justice Donald C. Hudson and Justice Liam C. Brennan. The case is number 219-1115, Coral Chemical Company, Plaintiff-Appellee v. Calvary Industries, Inc., Defendant-Appellant. Arguing for the Appellant, Anthony Danhilka. Arguing for the Appellee, Robert M. Chepanis. Very well. Good morning. I vote. Good morning, Your Honors. You may proceed. May it please the Court, my name is Anthony Danhilka. I represent Defendant-Appellant, Calvary Industries, Inc. We are here today to discuss what Calvary believes to be a very simple matter. A matter where Calvary Industries is not or is not subject to the specific jurisdiction of the Illinois Court in this specific case. I don't want to rehash for Your Honors every single point in our briefs. I think that would be something that would, in my limited time right now before the Court, would not do any justice. The facts are what they are. But to just sum up, this matter involves allegations that Calvary Industries induced an employee of Plaintiff-Appellee Coral Chemical to, one, come work for Calvary, and two, in doing so, breach his contract with Coral Chemical and provide trade secret chemical formulas to Calvary Industries, who is a competitor of Coral Chemical. The record in this case shows that Calvary has refuted these allegations through the deposition testimony of its former General Manager, John O'Connor, and its current Vice President, Chris Berger, as well as two affidavits that were executed by Mr. Berger. Here, the trial court erred by glossing over Mr. Berger's affidavit and ignoring the fact that Plaintiff-Appellee Coral Chemical failed, contrary to Illinois law, to supply a counter affidavit challenging Mr. Berger's statements in his affidavit. Instead, the circuit court reviewed the case through the lens of Mr. Patel prior to his time with Calvary and through the lens of Plaintiff taking Plaintiff's allegations in their third amended complaint as true and unopposed. Here, again, the record shows that Calvary Industries did not target Rashmi Patel or induce him to give Coral Chemical's trade secrets to Calvary Industries, and as this court knows, in order to find specific jurisdiction in Illinois, there has to be a specific act in Illinois tied to the lawsuit at hand. So here, Coral Chemical says, well, that act that ties this lawsuit together and ties it to Illinois is when Calvary induced Mr. Patel to come over and work with them in violation of his agreement. That's simply not the case, and this is what the court failed to speak and failed to review and did not even mention in its order that Mr. Patel actually testified in this case, or prior to when Calvary was a defendant, but still in this case, nonetheless, that he had quit Coral Chemical. He did not speak with Calvary until July of 2015, and his contract with Coral Chemical was terminated on June 30th of 2015. So he was not an employee of Coral when he spoke with Calvary, and whether Calvary contacted Mr. Patel or contacted Calvary is really of no consequence when determining jurisdiction in this matter. Who contacted who, and Calvary doesn't dispute that there was contact in Illinois, but that is not enough, and the trial court found, actually prior to this decision, that there was, that is not enough under Illinois law to establish specific jurisdiction. Doing so, it would mean that any company, a national company, when recruiting somebody in another state, could be dragged into that state for simply having a conversation with that person about becoming an employee. That is not what due process, what Illinois law states, what the U.S. Supreme Court has stated, and what due process requires. The circuit court also, in finding jurisdiction, while correctly stating, I think that Coral Chemical would agree, correctly stating the various factors for determining whether a suit brought under the guise of contractual business relationship court, with that interference with contractual business relationships, what must be analyzed in order to determine whether that contract is enough to bring an out-of-state defendant, who, in this case, Calvary Industries, which is an Ohio corporation based in Ohio, can be brought into Illinois. And what the court failed to realize, or analyze, I should say, is that the final act of that contract, which was Calvary Industries President John Moorlach's signature, completing that contract, occurred in Ohio. And the court notes, the circuit court notes in its opinion, yes, that the performance of Mr. Goodsell was supposed to gloss over that fact. And it's not enough to just simply say, hey, there was a conversation in Illinois, and that's enough to drag this company into a lawsuit in an Illinois court. Now, Coral Chemical, in their brief, and in their complaint, and in their response to you know, it says that, well, Mr. Goodsell sent these trade secrets, sent these documents. He went on his computer, he accessed Coral Chemical's server, and he sent these documents to Calvary, and Calvary had this scheme and asked him to do it. But there's no evidence of that. In fact, the only evidence is that Mr. Berger says, we didn't get these documents. We didn't ask for these documents. The evidence is that Calvary did the exact opposite, that they actually said, Mr. Goodsell, yes, we want you to work with us, but we don't want any of Coral Chemical's trade secrets. We don't want to know their customers. We don't want to know what you did there, because we know that that's going to be a violation of your agreement. We want your agreement to make sure we don't violate it. So they actually, the exact opposite happened. So even though the circuit court, through this very narrow lens, is saying, well, Coral says this is what happened, they accept that it's true, with no counter-affidavit, with nothing to refute it, except Calvary's affidavits, which the circuit court glosses over and seems to ignore. Now, it is Coral Chemical's burden to prove specific jurisdictions. They have not done so. And the circuit court has erred in failing to analyze the complete record and see that Calvary Industries is not subject to the specific jurisdiction of Illinois courts. Therefore, I'm coming before you today on behalf of Calvary Industries to ask that you reverse the circuit court's ruling and remand this case back to the circuit court with instructions to grant Calvary Industries' motion to dismiss for lack of personal jurisdiction. Thank you. Justice Hutchins, your questions. Thank you, Justice Burkett. Good morning, Mr. Den Helke. Good morning, Your Honor. I do have some questions. You seem to be arguing that Coral's failure to submit a counter-affidavit in response to Berger's affidavit in and of itself requires reversal. Is that your position? Yes, that is my position, Your Honor. How do you respond to this argument? The mere absence of the counter-affidavit from Coral is not necessarily dispositive. We don't decide it in the vacuum. And examining that question, don't we have to consider the full context of the record and the pleadings and other supporting documentary evidence in deciding that issue? It isn't just a matter of affidavit versus counter-affidavit. I would agree with you, Your Honor. It is not just... I agree. It is not a matter of counter-affidavit versus affidavit. You do have to consider the entire record. But the fact that Coral Chemical did not submit a counter-affidavit is dispositive because looking at the entire record and seeing that Coral Chemical did not submit this counter-affidavit that refutes Chris Berger and his sworn statements is dispositive because there's no evidence that would lead the court to determine that Calvary Industries is subject to specific jurisdiction. So I agree with you that the court does need to look at the entire record. However, I also agree and put forth that the lack of a counter-affidavit shows a lack of evidence and it is dispositive. Well, the court could consider the pleadings, the other supporting documentary evidence. Is that correct? The depositions? All that's in the mix, isn't it? Of course. Yes. Okay. Well, then let me ask you this. You represented or you argued at least, your take was that Patel... O'Connor didn't contact Patel and I think as you testily conceded that also would not be dispositive. But on that issue, doesn't the documentary evidence clearly establish... And first of all, didn't Patel testified that O'Connor contacted him very clearly? Yes, he did testify that after June 30th of 2015 that O'Connor contacted him while O'Connor testified that Patel contacted him. It's a he said, she said situation. Yes. Doesn't the documentary evidence over-establish that O'Connor was Calgary's primary contact with did they not have face-to-face follow-up meetings in Illinois during which Patel provided O'Connor with the employment agreement and there was other discussions between the two of them and both are Illinois residents, correct? Correct. Both are Illinois residents. Didn't O'Connor draft an email letter to Patel setting forth the terms of the consulting agreement and subsequently emailed the consulting agreement to Patel for Patel to sign in Illinois? Didn't that happen? It did happen. I would agree with you, Your Honor. But I would say, and I won't, I'll let Your Honor, I'm not going to presume that I know where Your Honor is going with this, but... Oh, but just answer the question as best you can. Yeah, yeah. I agree with Your Honor that O'Connor did have meetings with Mr. Patel. Those meetings were in Illinois to discuss his employment with Calgary Industries. He requested documents from Mr. Patel, not trade secret documents, but documents, hey, that say, Mr. Patel, we need to know to make sure that you don't violate your agreement with Coral. We know you were employed by Coral. Don O'Connor used to be a Coral employee. They have known each other for over 20 years. Well, I think the test of the But they've known each other for that amount of time. O'Connor doesn't want, as an employee of Calgary, we don't want to get him, to get Patel in trouble. We don't want Coral to be upset. The whole purpose of asking for these documents from Mr. Patel, yes, it occurred in Illinois to answer Your Honor's question, but the purpose of it was to avoid any of these trade secrets. There's no scheme, there's no inducement to leave Coral and come over and, hey, give us all your trade secrets as Coral seems to be pleading. Well, the trade secret issue is a separate issue. We're talking about initially minimum context as it answers the due process fairness question. But you're obviously acknowledging that there were contacts between Patel and O'Connor, Illinois residents in Illinois about being hired, correct? Correct. There were contacts. I think that is clear from the record that there were contacts in Illinois, but my argument is that that is not enough to establish specific jurisdiction in this case. All right. My final question relates to, you did argue in your brief that the trial court should have conducted an evidentiary hearing in this matter, correct? Correct. Yet when we look at the transcript, the trial court specifically inquired of both sides whether or not the trial court should conduct an evidentiary hearing in order to rule on the issue. The transcripts reflect that Calvary's counsel did not even acknowledge the question and never requested an evidentiary hearing. Is that correct? That is correct. I did not request an evidentiary hearing. Couldn't you have waived an evidentiary hearing? I, Your Honor, I'm sorry you broke up. I don't know if you said couldn't I have waived one or did I waive it? By not, by going along by not answering the question and not requesting a hearing, essentially didn't you forfeit that argument now on appeal? No, I don't think I did forfeit that argument on appeal. I think it's the trial court's burden to ask or to conduct that evidentiary hearing. I think that's something that the trial court still should have done that they should have, or at the very least, even if they did not, they should have taken a complete look at the record in its entirety and set that forth in its written opinion. All right. Thank you, Mr. DenHelt. That's all I have. Thank you, Your Honor. Justice, your questions. Thank you, Justice Burkett. So let me ask this. You point out that Berger says we never received these modified documents that Mr. Patel apparently modified, at least based upon the forensic analysis of his computer or the emails. But you agree that he was a Calvary employee when he was modifying Coral documents, substituting essentially Coral's name for Calvary's name. When that was occurring, he's a Calvary employee and he's doing this related to an Illinois company he used to work for. Is that fair? I think, Your Honor, I would say that he is modifying documents that I think something needs to be added to that statement. I think he's modifying, he's creating these documents that, one, are not Coral Chemical proprietary information. So these are, as Chris Berger has pointed out in his affidavit, these are, in his first affidavit, I should say, and his second, these are formulas that are in the public domain, that these are documents that Your Honor can go on Google and find. And he's taking these forms and, yes, he's putting Calvary's logo on them so that Calvary can use these forms. These are not proprietary forms of Coral Chemical. I would agree he's a Calvary employee when he's doing that, but I think what needs to be added to that is that he's using forms that are public knowledge, publicly available, and, yes, putting, that are not trade secrets or protected information. But isn't that putting the cart before the horse, so to speak? I mean, Coral obviously disagrees and is arguing that these things are proprietary, and that gets to the merits. And we're talking about minimum contacts and accepting for the moment as true Coral's assertion that these are proprietary. What Patel is doing, wouldn't that establish minimum contacts if Coral's view of it was correct? No, it would not establish minimum contacts, Your Honor, because even though Patel is doing this work, he's, there's no, what's the connection to Illinois? There's no connection to Illinois where If I may interrupt, if this, maybe my question wasn't clear. If this is, in fact, proprietary work product of Coral, let's just accept that as true for a moment, then what Patel is doing for Calvary is impacting the proprietary information of Coral, an Illinois company, that Patel acquired this information from while he was employed by this Illinois company. Why wouldn't that establish minimum contacts? It does not establish minimum contacts, Your Honor, because at this point, when Patel is doing that, you know, first of all, he's looking through the lens of what Calvary Industries is doing. And I understand Your Honor's, if I understand Your Honor's question correctly, it's with the premise that Mr. Patel is doing this while, after he's joined Calvary as its employee. That's correct? Yes. Okay. I just wanted to make sure I understood Your Honor's question. So in doing so, the question is, is whether that is actually occurring in Illinois? You know, is he doing that in Ohio? Is when he visited Calvary's facility in Ohio to do these formulas, is he doing that on his computer? That is not enough under the law to say, hey, just because your employee is doing this, you know, who knows where he's doing it from? You know, one computer, that does not establish that Calvary, Ohio Corporation can be dragged into court in Illinois. In doing so, you can say, hey, if somebody is doing that in California or Montana, you can drag Calvary Industries into court all over the country. I don't think that's... But that combined with him being recruited in Illinois, you know, arguably for this purpose, would I think provide minimum contacts? I have no additional questions. I'll turn it to you, Justice Burkett. Thank you, Your Honor. Thank you, Justice Brennan. I think all the questions I have have been answered, but just to point out the July 27th of 2015 email by O'Connor discussed the fact that there would be testing in Mr. Patel's house, correct? That was one of the terms. Let me, if you don't mind, Your Honor, can I get to that email shortly? Take a moment. Which email, the July 27th, Your Honor? Yes. That the email Your Honor is referring to? Did that, didn't that refer to, I believe, I'd send my notes from my review of the record, but discussed that Mr. Patel would be doing testing at his home in Illinois? Yeah, testing at his home, yeah, at his home in Illinois, and also at, you know, it's, I believe in the record is that he's doing testing in Ohio as well. That's my only question. Okay, thank you. Thank you, Your Honor. Thank you. Mr. Shoupias. Thank you, Your Honor. May it please the court, counsel. I think that what we're missing here, Mr. Van Helka mentioned at the very beginning of his argument that the court, the trial court glossed over certain facts that are pertinent from the Berger affidavits, and I think it's striking that when we go through the briefs tendered by the appellant, we just keep seeing repeated references to Berger's affidavits and that he filed them. They do not point out specific facts that are relied upon or dispositive. They just refer to the naked existence of an affidavit. Now, I understand under Illinois law, counter affidavit is one way to rebut these assertions. Deposition testimony can also do it. We went one better. We refuted Berger's affidavit with Berger's own testimony and his subsequent affidavit. This witness has three versions of events going around. The appellant wants to or does argue that because Berger said that none of these operative facts took place in Illinois, that's dispositive. They don't point out that Berger subsequently admits that he doesn't know who negotiated the contract. He doesn't know what happened in Illinois and what didn't happen in Illinois. Significantly, Berger, his first affidavit was tendered on behalf of the corporation, but when he tendered his second affidavit, which incidentally was in their reply brief to the motion to dismiss, you know, after we submitted our argument, he limits the audience. He no longer says it's on behalf of Calvary. He just refers to his own staff. And there is a difference because he does describe it as smaller than Calvary as a whole. He admitted that he just assumed where the employment contract was negotiated, but he didn't ask anyone. He didn't know, and this is significant because of the last line of questioning, Berger testified he did not know whether Patel performed work on Calvary's behalf in Illinois or even whether Patel lives in Illinois. So I don't know what uncontroverted evidence Calvary has put forth to the court to say that none of this took place in Illinois. Coral filed a verified complaint saying that it did take place in Illinois. All we have here is Berger arguing with Berger, which then takes us to the evidentiary hearing. I agree that Calvary waived their request for an evidentiary hearing, but let's say it was required. Required for what purpose? The dispute is with Berger. It seems like an evidentiary hearing would be held for the purpose of figuring out which version of events is true. If we take the latest version of events, that's the one where he admits he really doesn't know anything, where he takes everything down. So there isn't at the point where an evidentiary hearing would have taken place, there wasn't a dispute anymore. Berger cleared up his own testimony from his initial affidavit and his deposition testimony. He cleared it up for us. He said he doesn't know. So there's nothing that the court could rely on at that point unless the court got him to say that, oh, I was mistaken in my second affidavit, and you can rely on the first affidavit, and then he'd have to come up with some sort of excuse for the deposition testimony. The other thing that I wanted to point out that I believe is significant is this whole idea of the last action necessary to give rise to jurisdiction, both from a tort standpoint and a contract standpoint. From a tort standpoint, Calvary courts are clear. It's where the damages were incurred. That's the last place. With respect to the contract, it doesn't matter where Patel signed his contract with Calvary or where Moorlach signed the contract with Calvary. Our rights are not triggered by Patel's contract with Calvary. That's their deal. We're talking about our contract. Patel and Calvary can agree to whatever they want, and they can sign that document wherever they want, but if that could get jurisdiction away from Illinois based on a tortious interference claim, well, I would think that they would proactively sign the contract in the most favorable jurisdiction in the country, and then wherever the laws are best or the we aren't a party to that contract, we're not interested in that contract, and whether they wrote down their scheme and agreed to it and signed off on it, or they did it without a contract, that's irrelevant. With respect to the argument that Calvary didn't target Patel, well, Patel says they did. So we did submit sworn testimony. Deposition transcript operates the same way. Calvary's version of events with respect to the contact with Illinois is gutted solely by Patel, even if we don't get into all the emails. The emails themselves, they said that there was testimony that they didn't want Coral's stuff, their formulas, and that Berger says we didn't get these documents. Well, they've refuted that themselves. They had the documents, and Berger subsequently said that he could not answer on behalf of Calvary. And then, finally, there's been a deafening silence about the Ohio case. In the motion to dismiss, Calvary said that they filed a mirror image action for the initial complaint or the amended complaint in Ohio to try and get the Ohio court to take a look at the case. Calvary wasn't even a party at that point, but they filed a declaratory judgment action. The Ohio court ruled that Calvary's concerns, their cause of action, has to be litigated in Illinois. And ever since that decision came down, they've been completely silent about it and have ignored that there is a pending controversy now by their own admission, and that not only is there a controversy, but Illinois is the place where it should be litigated. As a practical effect, or as a practical matter, dismissing this complaint for lack of jurisdiction would take it back to Ohio, where that determination has already been made. It went up on appeal twice. First, because the appellate court wanted a better rationale for the form nonconvenience factors. The trial court tendered that and the appellate court then ruled. We've been up twice on that now. So I think that's important. And other than that, we believe that we used contradictory testimony and exposed basically false testimony using Calvary's own witnesses and own words against them. I would submit that that there's no better way to contradict Calvary than to get Calvary to admit that Calvary was wrong. There aren't any material facts that are undisputed by their own admission. And with that, I can take questions. Justice Hutchins, your questions. Thank you. Good morning, Mr. Stepanis. Good morning. Obviously, it's your position that it was not necessary for Coral to submit a counteraffidavit in response to Berger's affidavit. Is that correct? I don't think it... Coral wasn't obligated to use a counteraffidavit specifically. We had other options available to us. Can you summarize what those options were that supported your position? Well, we could submit deposition testimony or we could establish through sworn testimony, which we did, that material facts are in dispute. The key here is whether there were undisputed facts submitted in support of their motion. And plainly, when they come before the court with a sworn statement of personal knowledge that none of this happened in Illinois, and then they come in with an affidavit from the same person saying, well, I just don't really know whether anything happened in Illinois. I didn't check. Well, that throws it into dispute. And so we did that. And plus, throughout their motions, it really doesn't... There really isn't anything in here where they say what the disputed facts were. They say over and over and over that they submitted an affidavit. We didn't. They don't get into materiality at all. And so really, I don't know what specific facts here should have been supported by the affidavits they submitted. They were basically two different planets by the end of this. All right. The contract between Calvary and Patel that you alluded to contained an Ohio choice of law provision and was intended to be performed nationwide. Is that correct? I believe so. So why shouldn't we consider that factor in our analysis of whether minimum contacts have been established? Well, Patel and Calvary can agree amongst themselves where their dispute is litigated, if they have a contract dispute. But the contention that the two of them, or either one, tortiously interfering with an Illinois company... Or I'm sorry, when the two of them tortiously interfere with an Illinois company, they can't retreat to their own contract and say, well, we've chosen our own state where you have to litigate the dispute. We're not a party to it. And we're not saying that they had a contract that authorized Patel to steal our trade secrets or our proprietary information. They conspired together, but they didn't reduce it to a contract. So we believe whether there's a contract between them or not, it doesn't affect where we can file our suit. All right. You alluded to the litigation in Ohio, but I wasn't exactly clear on what you felt was the significance of that litigation in Ohio. How does that tie into our decision in this case? Well, the underlying motion to dismiss filed by Calvary argued that the Illinois court should take jurisdiction because the Ohio court was about to rule that... I'm sorry, I think I may have misspoke. In the motion to dismiss, Calvary argued that Illinois should decline jurisdiction because it would be taken up by the Ohio court instead. And after they made that argument, the Ohio court went the opposite direction. And so now we do have a dispute that they have identified, that Calvary identified between Coral and Calvary, where it has to be adjudicated somewhere. And now they don't say... After the decision came down, now Calvary is silent regarding where this would be litigated if not in Illinois. We're here on a jurisdictional issue. Where would we go? Not Ohio. Who else is involved? That's unclear. But the dispute was already tendered to a court. A smaller portion of the dispute was put before the Ohio court. Now it has expanded to include all of these meetings in Illinois and all of the actions, the additional actions that took place in Illinois. And I think it is an important question. Where is it going to go now if not here? All right. Thank you, Mr. Chepanis. That's all I have. Thank you. Brennan, your questions? Justice Burkett, I do not have any questions at this time. Thank you. Thank you. Mr. Chepanis, would you agree that while it's interesting, the Ohio Court of Appeals ruling is not binding on this court? Absolutely. Absolutely. I'm highlighting it because if this court declined jurisdiction, I do think it's still a fair question. Where should the dispute be litigated? Because Coral and Calvary agree that there's a dispute that requires adjudication. So I believe that Calvary should be bound by its prior assertion that we have a dispute that needs to be settled. And so that would be binding on Calvary. But of course, the Illinois or the Ohio Appellate Court can state that jurisdiction is not proper there and that it believes jurisdiction is proper in Illinois. But I've had cases where courts have treated the dispute as a hot potato. And I know that courts have every right to do that. Thank you, Mr. Chepanis. But that's all I have. Mr. Van Helkove, rebuttal. Thank you, Your Honors. I'll start with the Ohio lawsuit. First, based on Your Honor's review of the record, I think this is clear that the Ohio dispute dealt with form nonconvenience, a little bit different than personal jurisdiction. And regardless, I agree with Mr. Chepanis and the court that it is not binding on this court. In fact, it's irrelevant for this court's purpose of deciding whether Illinois has jurisdiction over an Ohio corporation. We're talking about a case in Illinois. We're not talking about a case in Ohio. I think that's a red herring. And sorry, I thought I was muted for a second and doesn't really need to be considered at this time by this court. In regards to the idea that Corl has not set forth any evidence, it's Corl's burden in this case to establish a prima facie case of jurisdiction over Calvary Industries. They have not done so in this case. Berger, he submitted an affidavit, he testified, he was asked questions regarding Calvary, whether Calvary had an office in Illinois, what type of business they did in Illinois, which goes to general jurisdiction at a point that I think Corl would even admit themselves that they've conceded that there's no general jurisdiction. It's Corl's burden to say, hey, this is what occurred in Illinois. And what they allege against Calvary, the three counts that they allege are one, violation of the Illinois Trade Secrets Act, two, tortious interference with contract, so their contract with Patel, and three, tortious interference with business relations. So going to the contract, the contract between Calvary and Patel does matter because Corl is alleging that, hey, you stole our employee, you know, you interfered with his non-disclosure agreement, and went to work with you in violation of that, and supplied these formulas, and that goes to the own violation of the Illinois Trade Secrets Act. So where the contract actually was finalized is important, and it's a factor that Illinois courts have set forth that needs to be considered, and the circuit court did not do that. You know, to Mr. Chapin's point, why didn't we just make the contract in the most favorable jurisdiction? Because that's not how we operate. We made the contract in Ohio because we are an Ohio corporation based in Ohio. We're not an Illinois corporation. We are not based in Illinois. This did not, the contract was not finalized in Illinois, and that's an important point for the court to consider. You know, the fact that they did not set forth a counteract, David, I think my argument on that point has been set forth in the briefs. You know, Mr. Berger saying that he wasn't speaking for the corporation, I think is a nuance that should be overlooked. You know, he was deposed. He's the vice president of Calvary. He was asked questions on behalf of the company. You know, it's, we're talking about semantics at this point, and that's not something you decide, an important question like personal jurisdiction on the semantics of whether Mr. Berger was speaking on his personal knowledge or on behalf of the company. He was Mr. Patel's supervisor, so he testified as to what he knew about Mr. Patel's actions. And as your honors have set forth before, that goes to the merits of the case. So with that, I will yield to the court for any questions you may have. Justice Hudson, any questions? I just have one question. Mr. DenHelke, would you agree that when you have two disputed sets of facts here, that that issue must be resolved in plaintiff's favor in determining the motion to dismiss? Is that correct? When you have two sets of facts in dispute... Right. A pre-trial motion. Don't the factual allegations have to be taken in the plaintiff's favor? The factual allegations in the complaint have to be taken in plaintiff's favor, except we're here, you have allegations that are not disputed by Mr. Berger, that these are documents that, for example, I think Mr. Chapin has pointed out about the documents. These are documents that we did not receive, that are not Coral Chemical documents. That was set forth, and Coral Chemical did not come back and say, hey, no, here's the proof that they are. Well, the facts may not be disputed in Mr. Berger's mind, but they certainly are disputed in the litigation, aren't they? Yes. Okay, thank you. That's all I have. Justice Brennan? Thank you, Justice Burkett. I have no follow-up questions. Mr. DenHelke, could you just comment on the Ohio case again? The, although it's not binding on us, the Ohio Court of Appeals considered essentially many of the same arguments and said that Illinois was a more convenient form to resolve the issues, correct? Correct. That is what the Ohio court said, Your Honor. That's not, although it's not binding on us, it does inform, should not inform our analysis? I think it's something that, you know, obviously I would not be so bold to tell the court what they can and cannot consider, especially something that's in the record. I think it's something that the court can look at and think, think about, but I also think, you know, to Mr. Chapandis' point and to extend Your Honor's question a little bit further, you know, the, the allegations in this case are that actions that Mr. Patel did affected customers in Georgia. So, maybe the Ohio, I wasn't privy to the Ohio court's analysis and, or their argument. You know, I'm not licensed in Ohio, so I couldn't be, but you know, that's not to say that this shouldn't be in Georgia, that this shouldn't be in any other state where Mr. Patel visited customers that quarrel saying that was stolen. I mean, the list can go on and on and on. So, to answer your question, yes, I think that the court can look at the Ohio decision, but I would argue that it's a red herring. And as Your Honor said, it is not dispositive, nor is it binding on this court. All right. Thank you very much. That's all I have, Mr. Danahalko. Thank you, Your Honor. I thank both parties for the quality of the arguments today. The case will be taken under advisement and a written decision will be issued in due course. The court stands adjourned for the day. Thank you. Thank you. Thank you.